Hon. A. M. BUCHANAN,
Hon. J. L. COLE,     } *Associate Justices.*
Hon. T. T. LAND.

---

THE STATE OF LOUISIANA, ex rel. JOHN TURPIN, *v.* JUDGE OF SECOND DISTRICT COURT OF NEW ORLEANS.

The Supreme Court cannot, in a proceeding by *mandamus*, revise the action of the District Judge.

When unreasonable delays occur in the District Court, which might work irreparable injury and injustice, the writ of *mandamus* is the proper remedy pointed out by law, to prevent a failure of justice, and compel the inferior court to pronounce judgment upon the demand.

If it appear in the proceeding by *mandamus*, that the District Judge does not refuse to render a judgment upon the petition, it is not in the power of the Supreme Court to compel him to render the particular judgment prayed for by the relator.

ON an application for a *mandamus* to the Judge of the Second District Court of New Orleans. *Duncan & McConnell,* for relator.

MERRICK, C. J. The relator alleges that he was a brother of *Edward Turpin,* deceased; that his said brother died, leaving a last will and testament, which has been admitted to probate, wherein the relator was constituted the legatee and executor; that the deceased left an orphan minor child not named in said will; that petitioner, not wishing to avail himself of said will to the exclusion of said child, is desirous of having said bequest reduced to the disposable portion, and said child recognized as the forced heir of her deceased father; that relator is the only blood relation of said orphan in this country, and that he cannot accept the tutorship in consequence of his interest as universal legatee under the will, the same being adverse to said minor; and that he knows of no person who will give bond and security required by the general provisions of law; that relator applied to the said Judge of the Second District Court for an order convoking a family meeting to

61

STATE
*v.*
JUDGE 2D DIS. CT.

deliberate upon the appointment of a tutor and under-tutor to said minor; that the said Judge granted the order; that the family meeting recommended the appointment of *Charles Fonda* as tutor and *Edwin Rodd* as under-tutor, on their complying with the requisites of law, except giving bond; that relator applied by petition to the Judge, with a copy of the proceedings of the family meeting, and prayed for the appointment of said tutor and under-tutor, and that said Judge has kept said petition under advisement many weeks, refusing to make said appointments, or either of them. The relator prayed for a rule *nisi* directing the District Judge to show cause why he should not make the necessary order appointing *Fonda* and *Rodd* tutor and under-tutor to said minor, on the terms recommended by the family meeting, or that he reject the same and proceed upon his own responsibility, and appoint a tutor and under-tutor, and that he require said appointees to qualify according to law.

The rule *nisi* was granted. The District Judge, after stating that the homologation of the proceedings of the family meeting would have the effect of jeopardizing the estate of the minor, proceeds to say: that "the father of the minor gave to his child a tutor; this tutor refused to act, because he believes that there will have to be some litigation respecting the will of which he is executor;" that "this is no reason why he should not have assumed the duties imposed upon him by his brother, because, in any litigation adverse to, or clashing with the interests of the tutor, or estate which he represents, it seems clear, that the under-tutor would take the place of the tutor, and that the proceedings would be conducted in his name."

The District Judge, among other matters, further suggests, that this court can not have before it the evidence in this proceeding, upon which he refused to homologate the proceedings of the family meeting, and therefore cannot judge of the correctness of his decision, and that the proper remedy is by appeal.

It is clear, that this court cannot, in a proceeding by *mandamus*, revise the action of the District Judge; for, as suggested by him, we are not presumed to have the evidence before us (in this *ex parte* proceeding) upon which he acted, and other parties besides the relator may be interested in maintaining the decree which he rendered. It was upon the supposition, that the District Judge had refused to render *any* judgment upon the petition of the party, that we allowed the rule *nisi* to issue. We know that where causes are under advisement in the lower court, and there is an accumulation of business before such court, or there are inquiries to be made for the protection of the interests of the minors, or difficult questions of law to be solved, or complicated facts to be investigated, this court ought not to listen with too ready an ear to suggestions that there is a denial of justice in the delays of the District Court; still, as "unreasonable delays" of this kind may sometimes work irreparable injury and injustice, the writ of *mandamus* seems to be the remedy pointed out by law to prevent a failure of justice and compel the inferior court to pronounce judgment upon the demand. C. P. 829, 830, 837, 838.

On an examination, however, of the answer of the Judge in this case, and the petition of the relator, we are of the opinion that it does not appear that the District Judge has refused to render a judgment upon the petition, and it is not in our power to order him to render the one or the other of the particular judgments prayed for by the relator. If his opinion has not been already reduced to writing, and his decree signed, it may be that he may think the petition ought to be dismissed, or some other form of a decree adopted. See *State* v. *Judge of Probates of Jefferson*, 5 Rob. 161.

We do not consider it proper to intimate an opinion upon the merits of this controversy, as requested; we can only do so after the whole proceedings have been brought up by appeal, together with the decree complained of.

We repeat in conclusion, that inasmuch as we cannot say from this record, that the District Judge has erred in refusing to render either of the judgments prayed for, and it does not appear that he has refused to render a judgment in some other form, and that, therefore, it does not appear that there is a denial of justice, or unreasonable delay, we are of the opinion that the rule taken in this case ought to be discharged.

It is, therefore, ordered, adjudged and decreed by the court, that the rule granted in this case be discharged, at the costs of the relator.